STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-03-253

THOMAS A. MOULTON,

    Plaintiff

    v.

CLIFFORD MOULTON,

    Defendant

**DECISION AND ORDER**

FEB   2005

This matter is before the court on Defendant's motion for summary judgment pursuant to M.R. Civ. P. 56.

The complaint arises out of a wood-splitting accident that caused several of Plaintiff Thomas Moulton's (hereinafter "Plaintiff" or "Thomas") toes to be severed from his foot. Plaintiff and the Defendant Clifford Moulton (hereinafter "Defendant" or "Clifford") are distant cousins, and Plaintiff lives with Clifford's daughter, Bethany Baker (hereinafter "Bethany "). Beginning in 1999, and in each subsequent year, Clifford gave Bethany and Thomas firewood for their personal use. Between 1999 and 2001, Thomas and Bethany visited Defendant's home a few times to cut their firewood with Defendant's cordwood saw. In addition, prior to October of 2001, Thomas and Clifford had split wood together using the cordwood saw on eight to ten different occasions.

On the morning of October 14, 2001, Thomas and Bethany arrived at Clifford's house to pick up a load of firewood for their personal use. During the splitting process, Thomas positioned himself between the saw and his pickup truck so that he could easily toss the pieces of wood into the bed as they were cut. At some point, the Plaintiff bent over to pick up a piece of wood from the ground. He then straightened and half

turned to toss the wood into his truck. As he did so, Thomas lifted his right foot into the rotating saw blade, not realizing that he had placed his foot directly beneath it.

The Defendant's cordwood saw was originally purchased by his father approximately fifty years before the accident in question. Since that time, the saw was modified by adding skids so that it could be easily dragged and by converting the original belt drive to a power take-off from a tractor. The Defendant had also fashioned a metal guard to fit around the "V-belts" that power the saw to avoid injury from accidentally brushing up against them. However, at the time of the accident, the area immediately surrounding the saw blade contained only the original guards. These guards did not cover the lower portion of the blade with which the Plaintiff's foot came into contact.

The Law Court has explained that:

> Summary judgment is no longer an extreme remedy. It is simply a procedural device for obtaining judicial resolution of those matters that may be decided without fact-finding. Summary judgment is properly granted if the facts are not in dispute or, if the defendant has moved for summary judgment, the evidence favoring the plaintiff is insufficient to support a verdict for the plaintiff as a matter of law.

*Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18, 21-22. Summary judgment is proper if the citations to the record found in the parties' Rule 56(h) statements demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Dickinson v. Clark*, 2001 ME 49, ¶ 4, 767 A.2d 303, 305. "A fact is material if it has the potential to affect the outcome of the case under governing law." *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, n.3, 770 A.2d 653, 655, n.3 (citing *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575). "The invocation of the summary judgment procedure does not permit the court to decide an issue of fact, but only to determine whether a genuine issue of fact exists. The Court cannot decide an

issue of fact no matter how improbable seem the opposing party's chances of prevailing at trial." *Searles v. Trustees of St. Joseph's College*, 1997 ME 128, ¶ 6, 695 A.2d 1206, 1209 (quoting *Tallwood Land & Dev. Co. v. Botka*, 352 A.2d 753, 755 (Me. 1976)). To avoid a judgment as a matter of law for a defendant, a plaintiff must establish a prima facie case for each element of her cause of action. *See Fleming v. Gardner*, 658 A.2d 1074, 1076 (Me. 1995).

The Defendant first recognizes that the claim asserted by the Plaintiff sounds in negligence. Implicit in this claim is the assertion that Clifford had a duty to act reasonably so as to avoid injury to those using his cordwood saw. The Defendant notes that the Plaintiff's complaint attempts to characterize the present situation as one involving premises liability, yet it does not allege that the land upon which the saw was operating was in any way defective or dangerous. Clifford contends that this accident could have occurred anywhere, and under the law of Maine, the mere presence of a potentially dangerous chattel on his land does not give rise to a legal duty. In support of this proposition, Clifford cites to *Coffin v. Lariat Associates Corp.*, 2001 ME 33, 766 A.2d 1018; (Plaintiff injured when mobile home being prepared for transport shifted and crushed foot. Plaintiff did not allege land on which mobile home sat was defective or dangerous, rather, that mobile home was in a dangerous condition because not properly set up on the property).

Moreover, the Defendant notes that the complaint does not allege that he was negligent in the way he operated the saw, but rather, that since the saw was inherently dangerous, the Defendant had a legal duty to affix an additional guard covering the bottom of the blade. In response to this notion, Clifford asserts that one injured by a dangerous product has but two means of recovery under Maine Law. One option is to assert a claim under Maine's strict liability statue, 14 M.R.S.A. § 221. In this case,

however, since the Defendant is neither a seller nor a manufacturer of the saw, the statute is inapplicable. Alternatively, one may seek recovery based on a design or manufacturing defect or for a failure to warn. Again, however, Clifford notes that only sellers and manufacturers, and not consumers, are subject to such claims. Since it is undisputed that he is merely a consumer, the Defendant contends that as a matter of law, he had no duty to make the saw safer than it was at the time of purchase.

Lastly, Clifford responds to an argument he anticipates will be presented in opposition to his motion. Particularly, the Defendant asserts that just because he had previously seen and used a more modern cordwood saw that was equipped with a blade guard not present on his 50-year old version, that awareness does not impose a legal duty on him to modify his saw to conform to the latest standard. Clifford asserts that such a conclusion would be akin to imposing a duty on an owner of a 1992 Toyota to install side-impact airbags in their car if that feature became standard on all 2004 Toyotas.

In opposition, Thomas first cites to the RESTATEMENT (SECOND) OF TORTS § 405, which states, "[o]ne who directly or through a third person gives or lends a chattel for another to use, knowing or having reason to know that it is or is likely to be dangerous for the use for which it is given or lent, is subject to the *same liability as a supplier* of the chattel" (emphasis in Pltf. Brief). In addition, Plaintiff cites to section 389 of the Restatement, which explains that those who supply chattels for another's use, knowing or having reason to know that it is unlikely to be made reasonably safe before being put to use, is subject to liability for physical harm suffered by the user. *See* RESTATEMENT (SECOND) OF TORTS § 389 (1965). Thomas also cites to several out of state cases,

including *Salmeron v. Nava*, 694 A.2d 709, 711 (R.I. 1997)[1]. In *Salmeron*, the plaintiff was helping the defendant renovate an apartment. The defendant provided a table saw for the plaintiff to use, but failed to install a guard on the saw blade. While using the saw, the plaintiff accidentally severed two fingers. The Supreme Court of Rhode Island held that the defendant had a duty to make the saw reasonably safe for the plaintiff's use, or at least to warn him of the absence of the guard. According to the court, "[the defendant] could easily have put a protective cover on the saw or have given notice or warning of its absence...or told [the plaintiff] specifically not to use the saw. [Defendant] chose not to take any of those reasonable precautions". *Id.* at 713. Thomas contends that the facts of *Salmeron* are analogous to the present case, and therefore Clifford owed him a duty to make the saw safe. In that the Defendant was clearly capable of fashioning a safety device for the saw, as evidenced by the V-belt guard, it was within his ability to similarly modify the area around the blade.

Thomas also responds to the side-impact airbag analogy discussed in the Defendant's brief. The Plaintiff contends that a more apt comparison in this situation would be to require owners of antique cars to install seatbelts that the original model came without.

Lastly, on the issue of whether the Defendant breached the duty owed, Thomas notes that the jury should resolve the question of whether a defendant's actions are reasonable under the circumstances. *See Budzko v. One City Center Assoc. Ltd. Partnership*, 2001 ME 37, ¶ 10, 767 A.2d 310, 314. Furthermore, the Plaintiff highlights evidence on this issue set forth in his opposing statement of material facts, such as Clifford's prior modifications of the saw, his knowledge of wood cutting equipment, his prior use of a

---

[1] Plaintiff also cites to *Ellis v. Cartisi*, 572 P.2d 107, 108 (Ariz. Ct. App. 1977) and *Bjork v. Mason*, Cal. App. 4th 544, 555 (Cal. App. 1 Dist. 2000).

similar saw with more modern safety devices, and his apparent concern that installing a guard would make it more difficult to remove the blade for sharpening. Thomas also points out that after the accident, Clifford did in fact fashion a guard to cover the lower portion of the blade.

In reply, the Defendant first raises various evidentiary objections. Specifically, Clifford argues that Plaintiff's attempt to introduce evidence of the newly installed blade guard is barred by Rule 407(a) of the Maine Rules of Evidence. Rule 407(a) prohibits the admission of evidence of subsequent remedial measures "to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction". M.R. Evid. 407(a). Also, Clifford objects to the Plaintiff's attempt to offer pictures of the modern cordwood saw, owned by Clifford's brother, that he had used in the past. The Defendant notes that these pictures are not part of the record evidence, and are thus not properly considered by the Court for purposes of the present summary judgment motion. Finally, Clifford devotes a substantial part of his reply brief to a distinguishing analysis of the legal authority cited in Plaintiff's opposition.

To the extent that Thomas attempts to hold Clifford liable for his failure to affix an additional guard around the exposed portion of the saw blade, this claim is, in essence, an attempt to hold him liable on a theory of negligent product design. As correctly noted by the Defendant in his brief, Maine law permits a plaintiff to recover on this theory only from an entity or party in the chain of distribution, and not from an ultimate purchaser or subsequent transferee. *See* Simmons, Zillman & Gregory, *Maine Tort Law* § 12.10 at 12-16 (2001 ed.). Likewise, a statutory strict liability action pursuant to 14 M.R.S.A. § 221 may only be asserted against a manufacturer or seller. *See* 14 M.R.S.A. § 221 (2003).

Additionally, insofar as the case law cited by Thomas dictates finding a duty under the present circumstances (which is by no means a certainty), this Court need go no further than to note that it is not the law of this jurisdiction. Similarly, it appears that the Law Court has never embraced sections 389 and 405 of the Restatement.

For all of the foregoing reasons, Plaintiff cannot, as a matter of law, prevail on a theory of products liability.

As for the Plaintiff's premises liability theory, it seems that the *Coffin* case is instructive, although not for the reason alluded to in the Defendant's brief. Although the plaintiff in *Coffin* did not allege that the land itself was dangerous or defective, the Law Court's recognition of this fact does not appear to have swayed their decision. Instead, the pertinent rule of law espoused in that case is that "[a] landowner has no duty to warn invitees of open and obvious dangers on the property unless the possessor should anticipate the harm despite the knowledge or obviousness of the harm to the invitee". *Coffin*, 2001 ME 33, ¶ 12, 766 A.2d at 1020 (citing *Williams v. Boise Cascade Corp.*, 507 A.2d 576, 577 (Me. 1986); RESTATEMENT (SECOND) OF TORTS § 343A(1) (1965)). Furthermore, the Law Court in *Williams* noted that a landowner may anticipate such harm where "the invitee will nevertheless encounter the condition because it is advantageous to do so, or...[because] the invitee is likely to be distracted". *Williams*, 507 A.2d at 577 (citing RESTATEMENT (SECOND) OF TORTS § 343A(1) cmt. f (1965)). In affirming the Superior Court's conclusion that the defendant had no duty to warn of the dangerous condition, the Law Court in *Coffin* noted that the plaintiff did not allege that the cause of his injury was hidden, or that he should not have been aware of its existence. Also, although not specifically addressed, the plaintiff apparently did not allege the existence of any circumstances, as contemplated in the comments to the Restatement, that would otherwise give rise to a duty to warn.

Considering the present undisputed facts in light of *Coffin* and the Restatement, it appears that the Plaintiff's premises liability claim survives summary judgment. Thomas has not alleged that the dangerous instrumentality was hidden, or that he was unaware of its existence. Indeed, the Plaintiff was fully aware of the fact that he was working with a cordwood saw, and that it is a dangerous piece of equipment. However, this appears to be a case where the landowner clearly expected the invitee to encounter the condition anyway because, "to a reasonable man in [the invitee's] position the advantages of doing so outweigh the apparent risk". RESTATEMENT (SECOND) OF TORTS § 343A(1) cmt. f (1965). It is undisputed that Thomas went to Clifford's house intending to use the saw, and that the results of his labor would provide him with a benefit. It is also undisputed that Thomas had used the saw on several previous occasions without injury. Thus, viewing the facts in a light most favorable to Thomas, the Court cannot as a matter of law conclude that a reasonable man in his shoes would not use the saw. Therefore, since under this reading of the facts Clifford should have anticipated the risk of harm, he was potentially under a duty to warn Thomas despite the obviousness of the danger. This conclusion, however, does not necessarily mean that Thomas will ultimately prevail. There still remains a jury question as to whether Clifford exercised reasonable care under the circumstances. Similarly, the jury may also conclude that Thomas acted negligently in failing to prevent harm to himself, or that risk of using the saw was unreasonable.

The legal analysis of the duty in this case is strikingly similar to that found in *Baker v. Mid Maine Medical Center, et al.*, 499 A.2d 464 (Me. 1985) where a spectator at a celebrity golf exhibition was hit by a golf ball driven by a non-celebrity under circumstances suggesting that the spectator's attention then focused on the celebrity. The analysis discusses the comment of the RESTATEMENT (SECOND) OF TORT § 343A in

noting that there are cases where the possessor of land should anticipate that a dangerous condition will cause physical harm to an invitee even though it is a known or obvious danger. The comment notes that the possessor of land is not relieved of the duty of reasonable care as this duty may require him to warn the invitee, or to take other reasonable steps to protect him, against the known or obvious condition or activity, *if the possessor has reason to expect that the invitee will nevertheless suffer physical harm.* (Emphasis supplied). The comment further notes that a reason to expect harm to the visitor from known or obvious dangers may arise where the possessor has reason to expect that the invitee's attention may be distracted, so he will not discover what is obvious, or will forget what he has discovered, or failed to protect himself against it. Using the analysis in *Baker*, 499 A.2d at 467, the evidence here generates for the jury's consideration the factual question whether the defendant should have reasonably foreseen that the plaintiff, focusing his attention on loading the wood, would suffer the resulting inattention to the proximity and dangerous nature of the unprotected saw. If the inattentiveness was reasonably foreseeable, the jury must then determine whether the defendant's failure to warn the plaintiff as to his location vis-à-vis the saw exposed the plaintiff to an unreasonable risk of harm.

The Plaintiff has presented properly supported facts from which a jury could determine that the Defendant breached his duty of care. Therefore, the premises liability claim presented in the complaint should not be dismissed at this juncture.

The entry will be:

Defendant's motion for summary judgment is DENIED.

Dated: Jan. 27, 2005

Donald H. Marden
Justice, Superior Court

THOMAS A MOULTON - PLAINTIFF

Attorney for: THOMAS A MOULTON

LAW OFFICE OF PETER L THOMPSON
217 COMMERICAL  ST, SUITE 200
PORTLAND ME 04101

SUPERIOR COURT
KENNEBEC, ss.
Docket No   AUGSC-CV-2003-00253

DOCKET RECORD

vs
CLIFFORD MOULTON  - DEFENDANT

Attorney for: CLIFFORD MOULTON
WILLIAM KELLEHER  - RETAINED
OFFICE OF WILLIAM J KELLEHER
7 EAST CRESCENT STREET
AUGUSTA ME 04330

Filing Document: COMPLAINT                    Minor Case Type: OTHER NEGLIGENCE
Filing Date: 10/09/2003

## Docket Events:

10/09/2003 FILING DOCUMENT - COMPLAINT FILED ON 10/09/2003

10/09/2003 Party(s):  THOMAS A MOULTON
           ATTORNEY - RETAINED ENTERED ON 10/09/2003
           Plaintiff's Attorney: PETER THOMPSON

10/09/2003 CERTIFY/NOTIFICATION - CASE FILE NOTICE SENT ON 10/09/2003
           MAILED TO ATTY THOMPSON.

10/23/2003 Party(s):  CLIFFORD MOULTON
           SUMMONS/SERVICE - CIVIL SUMMONS SERVED ON 10/16/2003
           ORIGINAL SUMMONS WITH RETURN SERVICE MADE UPON CLIFFORD MOULTON.

10/23/2003 Party(s):  CLIFFORD MOULTON
           DISCOVERY FILING - NOTIFICATION DISCOVERY SERVICE FILED ON 10/23/2003
           Defendant's Attorney: WILLIAM KELLEHER
           DEFENDANT, CLIFFORD MOULTON'S INTERROGATORIES PROPOUNDED TO THE PLAINTIFF AND DEFENDANT
           CLIFFORD MOULTON'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO THE PLAINTIFF SERVED ON
           PETER THOMPSON, ESQ. ON 10/21/03.

10/23/2003 Party(s):  CLIFFORD MOULTON
           RESPONSIVE PLEADING - ANSWER FILED ON 10/22/2003
           Defendant's Attorney: WILLIAM KELLEHER
           DEFENDANT'S ANSWER TO COMPLAINT, FILED.

10/23/2003 Party(s):  CLIFFORD MOULTON
           ATTORNEY - RETAINED ENTERED ON 10/22/2003
           Defendant's Attorney: WILLIAM KELLEHER

10/23/2003 ORDER - SCHEDULING ORDER ENTERED ON 10/23/2003
           DONALD H MARDEN , JUSTICE
           ORDERED INCORPORATED BY REFERENCE AT THE SPECIFIC DIRECTION OF THE COURT.  COPIES TO
           PARTIES/COUNSEL